# United States Court of Appeals

### for the

## Eighth Circuit

Case No. 24-3564

DON GIBSON, *et al.*,

*Plaintiffs-Appellees,*

– v. –

NATIONAL ASSOCIATION OF REALTORS,

*Defendant,*

COMPASS, INC.,

*Defendant-Appellee,*

EXP WORLD HOLDINGS, INC.,

*Defendant,*

REDFIN CORPORATION,

*Defendant-Appellee,*

(*For Continuation of Caption See Next Page*)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI - KANSAS CITY, 4:23-CV-00788-SRB.
THE HONORABLE STEPHEN R. BOUGH, JUDGE PRESIDING.

## REPLY BRIEF FOR OBJECTORS-APPELLANTS

MITCH SLADE
MITCH SLADE LAW OFFICE, P.A.
P.O. Box 1007
Spartanburg, South Carolina 29304
(864) 582-4212
mitch@mitchsladelaw.com

PATRICK EUGENE KNIE
KNIE & SHEALY LAW OFFICES
P.O. Box 5159
250 Magnolia Street
Spartanburg, South Carolina 29304
(864) 582-5118

*Counsel for Objectors-Appellants*

Appellate Case: 24-3564    Page: 1    Date Filed: 10/02/2025 Entry ID: 5564111

WEICHERT CO.,

*Defendant,*

UNITED REAL ESTATE, *et al.*,

*Defendants-Appellees,*

BERKSHIRE HATHAWAY ENERGY COMPANY, *et al.*,

*Defendants,*

FIVE D I, LLC, doing business as United Real Estate,

*Defendant-Appellee,*

PREMIERE PLUS REALTY, CO., *et al.*,

*Defendants,*

DOUGLAS ELLIMAN REALTY, LLC, *et al.*,

*Defendants-Appellees,*

NEXTHOME, INC., *et al.*,

*Defendants,*

– v. –

BENNY D. CHEATHAM; ROBERT DOUGLASS; DOUGLAS FENDER; DENA FENDER,

*Objectors-Appellants.*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................. ii

INTRODUCTION ...........................................................................................1

ARGUMENT ...................................................................................................1

    I.     Neither Plaintiffs'-Appellees nor Defendants'-Appellees Properly Reckon with the Failure of the District Court to Allow Objectors-Appellants Discovery .................................................1

    II.    Plaintiffs'-Appellants' Personal Attacks on Objectors-Appellants Is Evidence of the Animus To Which Objectors-Appellants Have Been Subjected ............................................6

    III.   Neither Group of Appellees Adequately Address the Insufficiency of the Injunctive Relief .................................................8

    IV.   Both Group of Appellees Insufficiently Defend the Lack of Consideration for the Release of the Franchisees .............................9

    V.    The Waiver of Objections Made By Non-Appearing Objectors Denied Objectors of Due Process .......................................13

CONCLUSION .............................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Huyer v. Njema*,
  847 F.3d 934 ...................................................................................................2

*In re Holocaust Victim Assets Litig.*,
  105 F. Supp. 2d. 139 (E.D.N.Y 2000) ..........................................................11

*International Shoe Co. v. Washington*,
  326 U.S. 310, 66 S.Ct. 154 (1945) ...............................................................14

*Phillips Petroleum v. Shutts*,
  472 U.S. 797, 105 S.Ct. 2965 (1985) ............................................................13

*Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, *et. al.*,
  825 F.3d 299 (6th Cir. 2016) ...........................................................................2

*Van Horn v. Trickey*,
  840 F.2d 604 (8th Cir. 1988) ...................................................................2, 3, 4

**Statutes & Other Authorities:**

Rule 23(e) of the Federal Rules of Civil Procedure.......................................... 4, 5, 16

Appellate Case: 24-3564   Page: 4   Date Filed: 10/02/2025 Entry ID: 5564111

# INTRODUCTION

In this appeal from a settlement approval, Objectors-Appellants objected to a number of provisions in the settlement agreements. Objectors-Appellants also made a motion to be allowed to conduct some discovery. The District Court denied that motion and, unfortunately, ignored and overruled the Objectors-Appellants' objections. The District Court, without any specific, particularized findings of fact regarding Objectors-Appellants took the nearly unprecedented step of requiring every objector to be present in his courtroom or have their objection waived. The Plaintiffs- and Defendants-Appellees have failed to answer the objections made by the Objectors-Appellants, while defending the clearly unconstitutional requirement the District Court placed on the Objectors. Neither group of Appellees have met the arguments presented in the initial brief of the Objectors-Appellants with anything more than conclusory citations of cases and pablum.

# ARGUMENT

**I. Neither Plaintiffs'-Appellees nor Defendants'-Appellees Properly Reckon with the Failure of the District Court to Allow Objectors-Appellants Discovery.**

In both briefs, the Appellees fail to correctly analyze the denial by the District Court of the Objectors-Appellants discovery request. Neither deny that the financial information given by the Defendants to the Plaintiffs was the "keystone

Appellate Case: 24-3564   Page: 5   Date Filed: 10/02/2025 Entry ID: 5564111

of the settlement agreement." *Shane Group, Inc. v. Blue Cross Blue Shield of Michigan*, *et. al.*, 825 F.3d 299 (6th Cir. 2016). Further, neither argue that the District Court had facts as they are commonly understood with which to analyze the financial provisions of the settlement. The Defendants-Appellants admit this explicitly - "attestations by Plaintiffs' forensic financial advisors Defendants' finances had been examined closely during adversarial settlement negotiations" - then attempt to cast those attestations as facts. *Defendants-Appellee Brief* at 62. Defendants-Appellees take the position that this, not the facts contained in Defendants' finances, is sufficient because "there is simply no requirement for a district court to conduct a searching financial review of each settling defendant prior to approving a settlement." *Id.* However, earlier in its own brief, Defendants-Appellees cite *Huyer v. Njema*, 847 F.3d 934 (quoting *Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988)), for the proposition that the District Court must determine the financial condition of the Settling Defendants in order to weigh that condition against the merits of the Plaintiffs' case. *Defendants-Appellee Brief* at 40.

*Van Horn* requires that the District Court weigh "the merits of the plaintiff's case" against, among other things, "the defendant's financial condition." *Defendants-Appellee Brief* at 40. How such a weighing can occur without access to

2

the various defendants' financial statements and, at the very least, a cursory review of the documents themselves is not explained by either group of Appellees. Plaintiffs-Appellees make the conclusory statement "here, the District Court had more than sufficient facts before it to approve the Settlements and it properly denied the Objectors' discovery request." *Plaintiffs-Appellee Brief* at 47. Earlier in its brief, Plaintiffs-Appellants admit that no financial information was provided to the District Court, arguing only that because "Plaintiffs reviewed the financial information or each Settling Defendants and its ability" and that the order submitted by the Plaintiffs and accepted verbatim by "the District Court [which] found" the settlement amounts were "reasonable in light of limitations on the Settling Defendants' ability to pay," that *Van Horn* factor is satisfied. *Id.* at 22.

Despite acknowledging that the District Court had no facts before it with which to independently determine the financial condition of the Settling Defendants, Defendants-Appellees go on to claim that "Objectors-Appellants have no basis to suggest that the 'financial statements' of parties (and non-parties) to the settlements would have uncovered something that the district court did not already consider." *Defendants-Appellee Brief* at 62. These positions are irreconcilable. The financial statements of the Defendants-Appellees would have provided the Court with an independent understanding of the financial condition of the

3

Defendants, something the Defendant admits is required in its citation of the *Van Horn* factors and admits did not happen. *Id.* at 40, 62. Reviewing financial statements rather than taking the "attestation of Plaintiffs and their forensic financial advisors" - a misstatement in that there was only one and he was also Plaintiffs' counsel - is hardly a hearing with live testimony and cross-examination. *Id.* at 44. It is simply complying with the duty set by Rule 23(e) of the Federal Rules of Civil Procedure that the District Court independently determine that a settlement is "fair, reasonable, and adequate." These Defendants are also private companies. The District Court could not have plausibly gained any financial information from any other source than the information sought by the Objectors-Appellants.

The Plaintiffs'-Appellees argue that these Settlements are simply an extension of *Burnett* and *Moerhl*. *Plaintiffs-Appellee Brief* at 6. They attempt to use that record to argue that these Settlements were the product of a long and hard fought battle between them and the Defendants-Appellees. That contention is given the lie by the Defendants-Appellees when they admit that "Objectors-Appellants sought financial data that was not supplied in discovery, but rather, was supplied in the context of confidential settlement negotiations." *Defendants-Appellee Brief* at 62. No discovery, in the way that the term is understood in

4

litigation, took place between the Plaintiffs and Settling Defendants. While it may be that there was some overlap between the discovery in those cases and the discovery that could have been had in this case, Plaintiffs had no answers to interrogatories or requests to produce in its possession. Rather, it had whatever financial statements the Defendants chose to produce to them. These settlement communications are the only ground upon which the Plaintiffs-Appellees base their assertion of the "Defendants' shaky financial condition," a condition not in the record. *Plaintiffs-Appellee Brief* at 22. In this case, then, neither the Plaintiff nor the Court has subjected the Settling Defendants to a searching examination of their financial condition.

The District Court abused its discretion in denying the Objectors'-Appellants' motion for discovery. That information would have allowed both the Objectors'-Appellants and the Court itself to build an independent understanding of the financial condition of each Settling Defendant, provide due process to the absent class members that the Objectors-Appellants represent, and satisfy the duty of the Court placed upon it by Rule 23(e).

5

## II. Plaintiffs'-Appellants' Personal Attacks on Objectors-Appellants Is Evidence of the Animus To Which Objectors-Appellants Have Been Subjected.

There is no evidence in the record that any of the Objectors-Appellants were "recruited by lawyers to participate in copycat lawsuits." *Plaintiffs-Appellee Brief* at 50.There was no request by the Plaintiffs-Appellants to take depositions or otherwise argue that any of the Objectors-Appellants were anything other than honest individuals who felt that their rights were not being properly looked after by the Plaintiffs' counsel. These individuals disagreed that these settlements were "fair, adequate, and reasonable," as is their right. The Cheatham Objectors' counsel have never represented objectors in class actions before, with the exception of Mr. Knie, who once objected to an Arkansas settlement when instructed to do so by Judge G. Ross Anderson in *Hege v. Aegon USA, LLC* 8:10-cv–01578-GRA. None of the Cheatham Objectors themselves have ever objected to a class action settlement with the exception of the related settlement in *Burnett*. These are not professional objectors, nor have these objectors employed professional objectors' counsel. Each of the Cheatham Objectors contacted Objectors-Appellants counsel and retained that counsel for the lawsuits to which they are a party.

This unsupported claim, undeveloped by individualized findings of fact or, indeed, any investigation at all, demonstrates the difficulty in which Objectors find

6

themselves. The District Court, in the only paragraphs it added to the otherwise nearly verbatim adopted order provided by the Plaintiffs, demonstrates its contempt for the Objectors-Appellants as discussed in Objectors'-Appellants' brief. Objectors have a valuable role to play in class actions, a role recognized by most courts. Here, Objectors would have, had they been allowed, pried information from the Defendants that would have allowed the Court to make an independent determination of the financial conditions of those Defendants. Further, Objectors made arguments regarding the franchisees that would have strengthened the injunctive provisions of the Settlements. Instead, Objectors were dismissed as "interlopers" and now hired guns, unethically drafted in to make Objectors' counsel a quick buck. Objectors counsel has not requested an attorneys' fee here, despite having drafted several objections, written two different initial appellate briefs and, at present, one reply brief. Objectors' counsel is unlikely to be compensated for this work or have its costs repaid, even if they are successful. Counsel and Objectors do have their own case, filed in South Carolina, but that litigation is separate from this litigation and so costs or fees are not likely to be recovered in that litigation for this work. The imputation of bad faith motives by the Plaintiffs-Appellants, accepted by the District Court in its order, demonstrates again that Objectors were dismissed on account of animus rather than

7

Appellate Case: 24-3564     Page: 11     Date Filed: 10/02/2025 Entry ID: 5564111

because they would not have provided benefit to the class.

### III. Neither Group of Appellees Adequately Address the Insufficiency of the Injunctive Relief.

Plaintiffs-Appellees misrepresent, as they have throughout this process, the injunctive relief actually contained in the Releases. Franchisees are not bound by the practice changes in the releases at all. Further, Plaintiffs-Appellees do not even attempt to reckon with the specific language pointed to in the Cheatham objection and appeal brief. In fact, the language of the settlement documents for practice changes specifically excludes franchisees: "defined for purposes of this paragraph to include ... but not franchisees." Cheatham.App. 74, R.Doc. 161-2 at 21. Cheatham.App. 107, R.Doc. 161-3 at 20. Cheatham.App. 139, R.Doc. 161-4 at 20. Cheatham.App. 179, R.Doc 161-5 at 20. Cheatham.App. 216, R.Doc. 161-6 at 23. Cheatham.App. 333, R.Doc. 294-1 at 28. Cheatham App. 367, R.Doc. 294-1 at 62. Cheatham.App. 433, R. Doc. 303-1 at 30. Cheatham.App. 469, R.Doc 303-1 at 66. The language throughout these releases further underscores that the practice changes are simply not binding on the franchisees, as discussed in our brief at pp. 23-24. The parent company here may "advise and periodically remind" or "make clear and periodically remind" Cheatham.App. 74-75, R.Doc. 161-2 at 20-21. Cheatham.App. 107-109, R.Doc. 161-3 at 20-22. Cheatham.App. 139-141, R.Doc. 161-4 at 20-22. Cheatham.App. 179-181, R. Doc. 161-5 at 20-22. Cheatham.App.

8

216-217, R. Doc. 161-6 at 23-24. Cheatham.App. 333-335, R. Doc. 294-1 at 28-30. Cheatham.App. 367-369, R. Doc. 294-1 at 62-64. Cheatham.App. 433-435, R. Doc. 303-1 at 30-32. Cheatham.App. 469-471, R.Doc. 303-1 at 66-68. This language does not create a "directive" as argued by the Plaintiffs-Appellants. *Plaintiffs-Appellee Brief* at 46. Rather, this language merely creates a suggestion.

Plaintiffs-Appellants go on to point out that the franchisees may be sued if those franchisees "ignore these directives" because these "releases do not cover any future conduct." *Id.* However, Plaintiffs have already demonstrated that they have no appetite to file suit against franchisees, as recognized by the Defendants-Appellants in a footnote to their brief. *Defendants-Appellee Brief* at 41-42, Footnote 12. Further, Plaintiffs' defense that future tortious conduct is not covered by a release eviscerates the very purpose of injunctive relief, namely that a company will not act in a similar tortious way in the future. Defendants-Appellees do not defend the injunctions as written except to claim that they are substantial. Neither group of Appellees even attempt to craft an argument using the actual words used in the settlement agreements because they cannot.

## IV. Both Group of Appellees Insufficiently Defend the Lack of Consideration for the Release of the Franchisees.

Plaintiffs-Appellants throughout its argument regarding the necessity of including franchisees in these settlements references facts not in the record. They

9

Appellate Case: 24-3564    Page: 13    Date Filed: 10/02/2025 Entry ID: 5564111

claim "Defendants also could not have paid most of their available cash in settlement unless the release covered all their related entities, including franchisees," that "Defendants would face the risk of potential contractual indemnification claims," and that "Objectors admit that Defendants control the operations of their franchisees and affiliates." *Plaintiffs-Appellee Brief* at 44-45. These statements are unsupported and should not be accorded any weight. Indeed, control of the franchisees is obviously disputed in that the settlements agreements, as discussed above, explicitly disclaim identity between the parent company and the franchisees. Cheatham.App. 74, R.Doc. 161-2 at 21. Cheatham.App. 107, R.Doc. 161-3 at 20. Cheatham.App. 139, R.Doc. 161-4 at 20. Cheatham.App. 179, R.Doc 161-5 at 20. Cheatham.App. 216, R.Doc. 161-6 at 23. Cheatham.App. 333, R.Doc. 294-1 at 28. Cheatham.App. 367, R.Doc. 294-1 at 62. Cheatham.App. 433, R. Doc. 303-1 at 30. Cheatham.App. 469, R.Doc 303-1 at 66. There has been no indemnification provision provided to the court nor was any financial information explaining why the Defendants would be precluded from paying money in its bank accounts if releases did not cover the related entities. Plaintiffs-Appellees' argument, essentially, is that there are reasons that might apply, the Settling Defendants wanted the franchisees included, and so Plaintiffs-Appellees agreed. This is insufficient to replace the basic requirement that a party, or non-party, must

10

provide consideration in order to be released.

Defendants-Appellees only discuss the merits of the District Court's release of franchisees in a footnote. Defendants-Appellees rely on a bald statement in Newberg that courts often approve the release of non-parties and *In re Holocaust Victim Assets Litig.,* 105 F. Supp. 2d. 139 (E.D.N.Y 2000), a case that deals with reparations to holocaust victims from the actions of the Swiss government, industry, and banks during World War II. That case took place in 2000, 55 years after the events giving rise to recovery. Further, not even that opinion claims that the settlement in that case was fair, adequate, or reasonable, only that it was the best that can be had given the length of time that had passed, the banking regulations of the Swiss government, and the destruction of records and conduct of the Nazis. *Id.* at 141. The present case, of course, is rather easily distinguished - the conduct occurred substantially more recently, no ethnic group was systematically murdered, and there was no governmental participation in the facts alleged in this case.

The Defendants-Appellees claim "Cheatham Objectors fail to recognize that Plaintiffs chose to address conduct remedies for brokers through settling with NAR and other MLSs directly, which has changed the allegedly anticompetitive rules." *Defendants-Appellee Brief* at 42. This concession admits that there are no practice

11

changes required for franchisees in the settlement agreements at issue in this case. It does not explain why the parent companies would need to agree such injunctive relief if the "conduct remedies" contained in the NAR and MLS settlement agreements were sufficient. The answer, of course, is that the enforcement by NAR and MLS of the clear cooperation rule was just one part of the enforcement mechanism of the conspiracy these settlement agreements were supposed to end. The parent companies certainly enforced the rules on their affiliates and trained their franchisees in the conspiracy, but the franchisees also took an active role in the conspiracy.

Defendants-Appellees also argue in this lengthy footnote that "Plaintiffs also reasonably determined that it would be wasteful of settlement funds to sue separately all franchisees nationwide, rather than use franchisee liability as a bargaining leverage." *Defendants-Appellee Brief* at 42. Plaintiffs have not made that argument. Indeed, Plaintiffs seem to take the position that there was no franchisee liability or that any such liability would have led to indemnification claims. But even accepting that Plaintiffs made that determination, elementary concepts of contract law still require that the franchisees provide consideration for their release and they did not.

12

### V.  The Waiver of Objections Made By Non-Appearing Objectors Denied Objectors of Due Process.

Appellees argue that, because this court has held that District Courts in a very limited circumstance has allowed an Objector to be deposed, District Courts have *carte blanche* to require Objectors to attend fairness hearings or have their objections waived.  *Defendants-Appellee Brief* at 65. *Plaintiffs-Appellee Brief* at 48.  They argue that this comes from the logical consideration that if a Court may require a deposition, it may require the less onerous requirement of attendance at a hearing.  *Id.* at 49.  Plaintiff-Appellee claims that "courts impose similar requirements all the time." *Plaintiffs-Appellee Brief* at 49.  This is not true. Courts generally do not require the attendance of Objectors at a fairness hearing. The very limited number of cases cited in the order are discussed and distinguished in our appeal brief.  Indeed, only where the District Court has made specific findings that an Objector may be acting improperly has an Appellate Court allowed the Objector be deposed.  None of the cases cited by the Defendants-Appellants are Circuit Court opinions, rather they are orders issued by District Courts that do not appear to have been appealed.

In *Phillips Petroleum v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965 (1985), the Supreme Court was presented an argument that orders from a Kansas court could not bind absent plaintiffs who had no connection to that forum unless those

13

Appellate Case: 24-3564     Page: 17     Date Filed: 10/02/2025 Entry ID: 5564111

Plaintiffs affirmatively opted in as a logical extension of the Court's jurisprudence in *International Shoe Co. V. Washington,* 326 U.S. 310, 66 S.Ct. 154 (1945). In ruling that *International Shoe* was inapplicable, then Justice Rhenquist pointed out that "in sharp contrast to the predicament of a defendant haled into an out-of-state forum, the plaintiffs in this suit were not haled anywhere to defend themselves upon pain of a default judgment." *Id.* at 809, 2973. In ruling that minimal due process is required for absent plaintiffs, the Court held "the plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel." *Id.* at 812, 2974. However, in requiring attendance, the District Court strays into *International Shoe*'s policy that one must have minimum contacts with a forum state before being haled into that state's court "upon pain of a default judgment." *Id.* Waiver of an objection is essentially that. As Objectors-Appellants point out in their initial brief, Objectors did not insert themselves into this litigation. They would have much rather prosecuted their case in their home state. However, they were required by the District Court to make an objection to preserve their own rights in their own jurisdiction. To then require them to make the journey cross country to a state with which they have no contact is to violate the fundamental due process requirement recognized by *International Shoe* and its related cases.

Appellate Case: 24-3564     Page: 18     Date Filed: 10/02/2025 Entry ID: 5564111

Both Appellees go on to argue that, even if the in-person attendance requirement is held to be error, it is harmless error. As discussed in our initial brief, however, the way in which the objections were waived demonstrated the Court's animus toward the Objectors. As discussed throughout our Brief and this Reply, the Court cursorily examined, if it examined at all, the arguments of the Objectors and the bases for the settlements. The District Court abdicated any responsibility to make its own findings by surrendering that role to Plaintiffs' counsel. If, as both Appellees claim, the presence or not of the Objectors had no bearing on the decision of the Court, then why is his order so preoccupied with it, going to great lengths to mis-cite case law as discussed in our Brief?

**CONCLUSION**

This reply brief is intended solely to respond to the Appellees' contentions that require further discussion for proper determination of the issues raised on appeal. It does not respond to issues that Appellant believes were adequately discussed in the opening brief. Appellant intends no waiver by not expressly reiterating them herein. Objectors-Appellants submit that the briefs of the Appellees fail to contend with or sufficiently answer the claims contained in this brief and our opening brief. This Court should hold that the District Court erred in waiving the objections made by the Appellants based on their non-appearance and

15

that the District Court abdicated its fiduciary duty to evaluate the fairness, reasonableness, and adequacy.  Further, the District Court erred in denying the Objectors-Appellants motion for discovery of information that would have provided the Court a basis with which to make the independent inquiry into the financial conditions of the Settling Defendants that Rule 23(e) requires.  Finally, the District Court erred in ruling that the franchisees of the Settling Defendants were properly released by settlement agreements when those franchisees were not bound by the injunctive relief found in the settlement agreements and those franchisees provided no consideration for the releases.

KNIE & SHEALY

*/s/ Patrick E. Knie*

Patrick E. Knie
Federal I.D. No. 2370
pat@knieshealy.com
Matthew W. Shealy
Federal I.D. No. 12823
matt@knieshealy.com
P.O. Box 5159
250 Magnolia Street
Spartanburg, S.C.  29304
Telephone No.     (864) 582-5118
Telefax No.  (864) 585-1615


Mitch Slade
MITCH SLADE LAW OFFICE, P.A.
Federal I.D. No. 5352

16

P.O. Box 1007
Spartanburg, S.C.  29304
Telephone: (864) 582-4212
mitch@mitchsladelaw.com

ATTORNEYS FOR OBJECTORS

September 30, 2025

Appellate Case: 24-3564     Page: 21     Date Filed: 10/02/2025 Entry ID: 5564111

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a). This brief contains 3.367 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using WordPerfect fourteen (14) point Times New Roman font.

Dated:   October 2, 2025

*/s/ Patrick E. Knie*
Patrick E. Knie
Attorney for Objectors

# CIRCUIT RULE 28A(h) CERTIFICATION

The undersigned hereby certifies that I have filed electronically, pursuant to Circuit Rule 28A(h), a version of the brief in non-scanned PDF format.  I hereby certify that the file has been scanned for viruses and that it is virus-free.

/s/ Patrick E. Knie
Patrick E. Knie
Attorney for Objectors

# CERTIFICATE OF SERVICE

The undersigned attorney for Objectors-Appellants certifies that on October 2, 2025, an electronic copy of the Reply Brief for Objectors-Appellants was filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

Dated: October 2, 2025

*/s/ Patrick E. Knie*
Patrick E. Knie
Attorney for Objectors
